# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PAUL LUCERO,

     Plaintiff,

vs.                                  Civ. No.  09-744 JP/RHS

MCKINLEY COUNTY, a Municipal Entity
Organized Under the Laws of the State of New Mexico
and its subsidiary the McKinley County Detention
Center, SERGEANT JONES, an employee of the
McKinley County Detention Center, Individually
and in Defendant's official capacity, DONNA
GOODRICH, Warden/Director of the McKinley
County Detention Center, Individually and in
Defendant's official capacity,

     Defendants.

## MEMORANDUM OPINION AND ORDER

     On May 7, 2010, Defendants McKinley County ("County"), Sergeant Derwin

Jones ("Sgt. Jones"), and Donna Goodrich ("Director Goodrich") (collectively

"Defendants") filed Defendants' Motion for Summary Judgment ("Motion")(Doc. No.

65).[1]  Then, on June 1, 2010, Plaintiff Paul Lucero filed Plaintiff's Response to

Defendants' Motion for Summary Judgment ("Response")(Doc. No. 88).  Next, on June

17, 2010, Defendants filed Defendants' Reply to Plaintiff's Response to Defendants'

Motion for Summary Judgment ("Reply")(Doc. No. 102).  Finally, on June 28, 2010,

Lucero, with permission from the Court, filed Plaintiff's Surreply to Defendants' Motion

for Summary Judgment ("Surreply")(Doc. No. 105). The parties presented argument on

---

[1] Although Defendants filed their Motion before Plaintiff filed his Second
Amended Complaint (Doc. No. 93), the Court, having reviewed both Plaintiff's First
Amended Complaint (Doc. No. 1-1) and his Second Amended Complaint, has
determined that the essential allegations and primary causes of action are identical in
both iterations of Plaintiff's Complaint.  Accordingly, the Court finds that Plaintiff's
filing of his Second Amended Complaint after Defendants filed their Motion does not
materially affect the Court's analysis of Defendants' Motion.

Defendants' Motion at a pretrial conference held on July 1, 2010.  Having reviewed the briefs and the applicable law and having considered the arguments of counsel at the pretrial conference, the Court finds that Defendants' Motion for Summary Judgment should be granted in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). When applying this standard, the Court examines "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (citation omitted). "Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof." *Id.* (citation omitted). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). "Unsupported conclusory allegations, however, do not create an issue of fact," *id.* (citation omitted); neither does "evidence, including testimony, . . . based on . . . mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted). Likewise, "the party opposing summary judgment may not rest on the averments or denials of its pleadings," but rather must go beyond the pleadings to show a genuine issue for trial.  *Gonzales v. Millers Cas. Ins. Co. of Tex.*, 923 F.2d 1417, 1419 (10th Cir. 1991).  Indeed, "[t]he mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be

2

evidence on which the jury could reasonably find for the [non-moving party]."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, "it is not [the Court's] province at the summary judgment stage to weigh evidence or make credibility determinations." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

## BACKGROUND[2]

This case arises from Plaintiff Paul Lucero's incarceration in the McKinley County Adult Detention Center ("MCADC") in 2007, during which time he claims he sustained two beatings at the hands of fellow inmates.  Lucero was incarcerated in the MCADC on at least two separate occasions in 2007.  (*See* Ebright Aff. ¶ 4, attached to Reply as Ex. D; Silversmith Aff. ¶ 4, attached to Mot. as Ex. A.)  The first of those two incarcerations began on March 19, 2007 and ended on August 20, 2007.  (Ebright Aff. ¶ 4.)  From March 22, 2007 to April 10, 2007, Lucero was housed in the MCADC's B-Pod.  (*Id.*) Lucero claims that in 2007 there was "constant violence between inmates from Arizona and inmates from New Mexico[,]" (Lucero Aff. ¶ 2, attached to Resp. as Ex. 2) which he

---

[2] Lucero has not responded to any of Defendants' statements of material fact in the manner required by D.N.M.LR-Civ. 56.1 (b).  Although Lucero references contesting Defendants' statements of material fact through his "memorandum numbered by Roman numerals," (Surreply at 2), the Court notes that the Roman numerals to which Lucero refers are the point headings that identify the various sections of Lucero's Response.  (*See generally* Resp.)  Notably, those point headings do not identify specific facts that Lucero claims to dispute as required by Local Rule 56.1 (b) and the vast majority of those point headings contain a variation of the argument that Lucero's Response "assails" Defendants' Motion.  (*See generally id.*)  Lucero contends that deeming Defendants' statements of material fact as admitted promotes "form over function," however the Court does not agree.  Local Rule 56.1 (b) clearly delineates the requirements for responding to statements of material fact in a summary judgment motion, and Lucero's Response in no way approaches meeting those requirements.  The inadequacy of Lucero's response to Defendants' statements of material fact is not a mere clerical error but rather amounts to a wholesale failure to comply with Local Rule 56.1 (b).  Thus, the Court will consider Defendants' statements of material fact as admitted.

alleges extended into B-Pod (*see* Lucero Dep 122:14-25.)  Lucero contends that while he was housed in B-Pod, a group of eight to ten Arizona inmates beat him after he refused to attack another inmate at their direction.  (Second Amended Compl. ¶ 15; Lucero Dep. 21:14-15, 23:6-24:23.)  However, MCADC records indicate that only seven Arizona inmates were housed in B-Pod during the time Lucero was housed there and the MCADC does not have any records of any altercations involving Lucero during his time in B-Pod.  (Ebright Aff. ¶¶ 4-5.)  Nevertheless, Lucero asserts that he sustained chipped teeth as a result of the alleged beating.  (*See* Health Service Request Form dated May 2, 2007, attached to Reply as Ex. G.)

Lucero began his second incarceration at MCADC, the incarceration that is primarily at issue in this case, on September 21, 2007.  (Silversmith Aff. ¶ 4.)  MCADC records indicate that Officer Myrtle Denetclaw booked Lucero into the MCADC on that day.  (*Id.* ¶ 5.)  Initially, the MCADC housed Lucero in a holding cell for observation, then moved him to F-Pod on September 22, 2007.  (*Id.* ¶¶ 8-9.) Notably, the shift schedule for September 21, 2007 reveals that Sgt. Jones was not working and the MCADC has no record of Sgt. Jones having any contact with Lucero on that day. (*Id.* ¶ 6.)  Lucero claims that "probably on September 24th or 25th, 2007" Sgt. Jones informed Lucero that he was going to be moved to B-Pod, despite Lucero allegedly informing Sgt. Jones of the previous beating in B-Pod during his earlier 2007 incarceration.  (Second Amended Compl. ¶¶ 25-27; Lucero Dep. 20:4-21:9, 27:8-21, 119:19-120:12.)  According to Lucero, Sgt. Jones responded to Lucero's protests about being placed in B-Pod by stating that Lucero did not have a say regarding where he would be housed but that Sgt. Jones would "keep an eye out" for Lucero.  (Lucero Dep. 27:8-25, 120:3-12.)  Lucero

maintains that within two hours of being placed in B-Pod, the same group of inmates responsible for the previous beating beat Lucero once again.  (Second Amended Compl. ¶¶ 29-31; Lucero Aff. ¶ 6.)  According to Lucero, after this second beating, unidentified corrections officers saw him bleeding but denied his request for medical care.  (Lucero Aff. ¶¶ 8, 9.)  Likewise, Lucero contends that he filed a grievance after the second beating and further contends that he received requested medical care "only sparingly" in the months following the alleged beating.  (*Id.* ¶¶ 10-11.)

The MCADC records, however, tell a different story.  Importantly the MCADC has no record of Lucero ever being housed in B-Pod between September 21 and September 25, 2007, nor do they have any record of an altercation involving Lucero or a grievance or medical services request form from Lucero on those dates. (Silversmith Aff. ¶ 10-12; *cf. id.* ¶ 13.)  Furthermore, despite Lucero's claim that the same group of inmates who allegedly assaulted him before were responsible for the second alleged beating, MCADC records indicate that only one Arizona inmate was housed in B-Pod from September 21 to September 27, 2007, and there are no records suggesting that Lucero and that inmate had any contact whatsoever.  (Ebright Aff. ¶¶ 7, 8.)  Additionally, the MCADC offers inmates who are aware of enemies in the facility or who feel that they need additional protection the option of completing a Request for Investigation of Safekeeping/ Protective Custody/Transfer form.  (*Id.* ¶ 11.)  This form is available to all MCADC inmates at the time of booking and through the housing offices, and is thus available to inmates at all times.  (*Id.*)  Lucero never completed one of these forms.  (*Id.*)

With respect to Lucero's allegations concerning denial of medical care after the second alleged beating, MCADC records indicate that the first medical services request form submitted by Lucero during the second incarceration arrived on October 4, 2007

and indicates that Lucero was housed at that time in G-Pod.  (Silversmith Aff. ¶ 13.)  In that form, Lucero requested that he be allowed to receive a medication he had previously taken for headaches.  (*Id.* ¶ 13.)  That form did not mention any injuries from an alleged beating.  (*Id.*)  Additionally, MCADC records reveal that Lucero received medical services in response to every request he submitted.  (*Id.* ¶ 14.)  Lastly, MCADC does not have any records suggesting that either Director Goodrich or Sgt. Jones were involved with or otherwise knew anything about either of the alleged beatings.  (*Id.* ¶ 15.)

## DISCUSSION[3]

### I.   Mr. Romero's Affidavit Under Fed. R. Civ. P. 56 (f)

Rather than responding to any of Defendants' statements of material fact as required by D.N.M.LR-Civ. 56.1 (b), Lucero's counsel, Mr. Romero, devotes the first six pages of Lucero's Response to a lengthy narrative of Mr. Romero's grievances concerning the course of discovery in this case.  Mr. Romero contends that Defendants have withheld pertinent evidence, namely jail booking sheets, grievance forms, medical services request forms, and photographs of Lucero taken by his mother,[4] and that they

---

[3] Before beginning its discussion of Defendants' Motion, the Court pauses to express its frustration at the exceedingly poor quality of the parties' briefing.  While the deficiency of the briefing is certainly attributable, in part, to the vague allegations in Lucero's Second Amended Complaint, Lucero's inartful pleading of his Second Amended Complaint does not absolve the parties of their obligation to develop their legal arguments adequately and to present them in a manner that assists the Court in its analysis.  As discussed below, the parties' briefs were replete with incomplete, inaccurate, or inapplicable legal standards, which significantly complicated the Court's analysis of the merits of the issues presented.  Consequently, the Court was unnecessarily required to expend considerable time and resources sorting out the parties' muddled arguments and conducting research that counsel should have done.  The Court admonishes counsel to use greater care in the preparation of future filings.

[4] Mr. Romero acknowledges in his affidavit that Defendants have produced some photographs, but it is not clear whether the photographs he is referring to are those taken by Lucero's mother or by someone else.  Regardless, Mr. Romero maintains that the pictures disclosed "do not capture the majority of the wounds [Lucero] received after the September, 2007 beating."  (Affidavit of Román Romero, attached to Resp. as Ex. 7.)

have deprived Mr. Romero of the opportunity to depose the named Defendants and video tape the inside of the pod in which Lucero claims he was housed.  However, the Honorable United States Magistrate Judge Scott has already ruled on most of these issues and those on which he has not ruled were never the subject of any motions.

Specifically, with respect to the booking sheets Mr. Romero claims Defendants withheld, Judge Scott found that "it is clear that Defendants have now supplemented their responses in a manner which provides full and complete answers and responses to the interrogatories and requests for production [at issue]. . . ."  (Order Denying Plaintiff's Second Motion to Compel, Doc. No. 41.)  Likewise, with respect to the depositions of the named Defendants, Judge Scott held that Mr. Romero had failed to take the depositions within the discovery deadlines and had neglected to file his motion to compel those depositions until one month after the discovery motions deadline, and thus Judge Scott denied Mr. Romero's request to depose the named Defendants.[5] (Order Denying Plaintiff's Motion to Compel Depositions, Doc. No. 99.)  Finally, with respect to Mr. Romero's request to video tape the pod in which Lucero claims he was housed, Judge Scott, in declining to allow Mr. Romero to video tape the pod, observed that Mr. Romero's request was unduly burdensome on the MCADC and that Defendants' offer to provide Mr. Romero with a layout of the facility was "reasonable under the circumstances."  (Order Denying Plaintiff's Motion to Compel Inspection of Property Pursuant to Fed. R. Civ. P. 34, Doc. No. 87.)

---

[5] Judge Scott also noted that before Mr. Romero moved to compel their depositions, the individually named Defendants had moved for qualified immunity. Consequently, Judge Scott found that subjecting them to depositions would unnecessarily subject those Defendants to the burdens of litigation before the issue of qualified immunity had been decided.  (Doc. No. 99 at 2.)

Despite Judge Scott's rulings and the absence of any motion addressing the other alleged discovery deficiencies, Mr. Romero asserts that "discovery has not been adequately concluded [sic], and as such, this Court should deny summary judgment and let the jury decide the case on its merits."  (Resp. at 6.)  Additionally, Mr. Romero contends that Defendants' Motion is premature in light of the purported discovery deficiencies and that deciding that Motion now would allow Defendants to "wreak [sic] great benefits from their failure or refusal to produce clearly relevant information." (Resp. at 5.)  The Court finds these arguments entirely without merit.

Fed. R. Civ. P. 56 (f) provides that "[i]f a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: 1) deny the motion; 2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or 3) issue any other just order."  "When a party files an affidavit under Rule 56(f) for additional discovery time, the party invokes the trial court's discretion." *Patty Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (10th Cir. 1984). Notably, Rule 56 (f) does not mandate that the Court deny a motion for summary judgment or order a continuance any time the party opposing the motion presents an affidavit under that rule.  Rather, "[t]o invoke the shelter that rule 56(f) provides, a party must (i) file an affidavit, (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts, (iii) explain why facts precluding summary judgment cannot be presented, and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment."  *Gulfstream Worldwide Realty, Inc. v. Philips Electronics N. Am.*

*Corp.*, 2007 WL 5685127 at *7 (D.N.M., Oct. 19, 2007)(Browning, J.)(citations omitted). Generally, a Rule 56 (f) affidavit "should be treated liberally unless dilatory or lacking in merit."[6] *Patty Precision*, 742 F.2d at 1264.  Nevertheless, "it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." *Lewis v. City of Fort Collins*, 903 F.2d 752, 758 (10th Cir. 1990)(internal quotation marks and citation omitted).

    Mr. Romero's Rule 56 (f) affidavit is both dilatorily filed and without merit.  First, this case has been pending for nearly one year and the extended discovery period expired more than two months ago, yet Mr. Romero did not make any meaningful effort during that time period to secure the photographs and unspecified grievance and medical services request forms he claims have been withheld.  Despite claiming the importance of those photographs and documents to Lucero's case, Mr. Romero has not

---

[6] The Fifth Circuit Court of Appeals has explained that:

> What is 'dilatory' depends upon the particular posture of the case presented.  The factors deemed relevant in the cases . . . are: 1) the length of the pendency of the case prior to the Rule 56(f) request; 2) whether and when plaintiff could have anticipated its need for the requested discovery; 3) the previous efforts, if any, made by plaintiff to obtain the needed information either through Rule discovery or otherwise; 4) the degree and nature of discovery already undertaken; 5) any limitations placed upon discovery previously by the trial court; 6) any prior solicitations of or provisions for discovery by the trial court; 7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim be dismissed; and 8) whether the requested information was inaccessible to plaintiff, e.g. as when within defendant's exclusive control, or whether alternative, accessible sources existed but were foregone.

*Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1031 (5th Cir. 1983).

offered any explanation for his failure to file a motion to compel in an effort to obtain them.  Given the lack of specificity with which he has identified the purportedly withheld photographs and documents, it is difficult to assess whether either Lucero or Mr. Romero would have had access to either the photographs or the documents during the pendency of the case.  However, whether either Lucero or Mr. Romero had access to either the photographs or the documents is largely inapposite because it should have been obvious that both would potentially be relevant to Lucero's claims, so there is no reasonable excuse for waiting nearly two months past the discovery deadline to file a Rule 56 (f) affidavit requesting those items.

Next, aside from being dilatorily filed, Mr. Romero's Rule 56 (f) affidavit is entirely without merit given that Judge Scott has already declined Mr. Romero's requests for the majority of the information he seeks.  In this vein, Mr. Romero apparently seeks to use his Rule 56 (f) affidavit as a *de facto* motion for reconsideration of Judge Scott's previous rulings, which, of course, is not a proper use.  Furthermore, Mr. Romero has failed to offer anything beyond mere conjecture regarding how, specifically, the information he seeks would be relevant to Lucero's opposition to Defendants' Motion.  Thus, Mr. Romero's Rule 56 (f) affidavit is wholly deficient and does not support the relief he requests.  Therefore, the Court will deny Mr. Romero's request to deem Defendants' Motion premature and likewise will deny Mr. Romero's request to stay proceedings to allow additional discovery.  Accordingly, the Court will now turn to the merits of Lucero's claims.

## II.    **Claims Under Count I of Lucero's Second Amended Complaint**

Liberally read, Count I of Lucero's Second Amended Complaint ostensibly states three claims under one count: 1) a claim under the Eighth Amendment for inadequate medical care, 2) a claim under the Eighth Amendment for failure to protect, and 3) a substantive due process claim for failure to protect.  (*See* Second Amended Compl. ¶¶ 32-37.)  In their Motion, Defendants treated Lucero's claims under Count I as stating only two claims: 1) a claim under the Eighth Amendment for failure to provide adequate medical care, and 2) a substantive due process claim for failure to protect.  (*See* Mot. Summ. J. at 6-9.)  However, while purporting to construe Lucero's failure to protect claim as falling under substantive due process jurisprudence, the legal standards Defendants articulated in a footnote in this section of their Motion stated standards applicable to a failure to protect claim arising under the Eighth Amendment.[7]  (*Id.* at 7 n. 1.)  While Lucero did not directly dispute Defendants' characterization of his claims, the arguments he raised in opposition to Defendants' Motion suggest that he envisions his claim for failure to protect as one raised under the Eighth Amendment rather than under the Due Process Clause of the Fourteenth Amendment.  (*See* Resp. at 6-13.)

As a result of this confusion, on June 14, 2010, the Court sent Mr. Romero a letter requesting clarification regarding the legal basis for Lucero's claims under Count I.  On June 18, 2010, Mr. Romero responded to that letter and stated that:

---

[7] To the extent Defendants raised arguments relevant to a substantive due process claim, they merely provided a lengthy summary of *Davidson v. Cannon*, 474 U.S. 344 (1986) and alluded, without specific citation, to the United States Supreme Court's holding in that case that alleged negligence does not give rise to a cognizable substantive due process claim.  (Mot. at 6-7.)

> The Plaintiff in this matter believes that there are two substantive claims alleged.  The Plaintiff alleges that his right to be free from attacks by other inmates in this case as provided for in *Farmer v. Brennan*, 511 U.S. 825 (1994) was violated.  As such, the Plaintiff claims that he was denied his constitutional rights as the Defendants were deliberately indifferent in this matter . . ..  Plaintiff concedes that in both Eighth Amendment and Fourteenth Amendment jurisprudence deliberate indifference appears to be the requisite standard of care . . . .  Thus, his "failure to protect" claim is indeed duplicative under both the Eighth and Fourteenth Amendment[s].
>
> The Plaintiff further asserts that his Eighth Amendment rights were violated because he was denied proper medical care after the conclusion of the September, 2007 beating . . ..

Unfortunately, Mr. Romero's letter did little to clarify the basis for Lucero's failure to protect claim.   Broadly construing Mr. Romero's characterization of Lucero's claims, it appears that Lucero intends to assert a failure to protect claim under both the Eighth Amendment and under the Due Process Clause of the Fourteenth Amendment, despite the claims being duplicative of one another.

At the pretrial conference, the Court sought additional clarification of the legal basis for Lucero's claims under Count I.  However, in response to the Court's question, Mr. Romero simply referred the Court to his June 18, 2010 letter and largely repeated his statements from that letter.  Therefore, given the ambiguity with which Lucero has articulated his claims under Count I and because Defendants have raised arguments with respect to each potential iteration of those claims, the Court will address each of those ostensible claims below.

### A.    Inadequate Medical Care Claim

Defendants move for summary judgment on Lucero's inadequate medical care claim arguing that Lucero "did not suffer from a medical need that was sufficiently serious that a physician diagnosed his alleged condition as mandating treatment or was

so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (Mot. at 9.) Defendants note that the first Health Services Request Form MCADC received during Lucero's second 2007 incarceration arrived on October 4, 2007 and requested previously prescribed medication for headaches and made no mention of any injuries or of an alleged beating. Additionally, Defendants observe that Lucero received medical treatment in response to every Health Services Request Form he submitted.

Lucero responds by arguing that his "need for medical care was so utterly plainly obvious that even a lay person jail guard should have easily recognized the need for a doctor's attention when [he] was discovered being beaten up." (Resp. at 12.) In that vein, Lucero contends that "[a]fter being severely beaten in September, 2007, [he] asked for, and did not receive, immediate medical attention. [He] subsequently consistently requested medical attention for what he believed were migraine headaches due, perhaps, to the bump on the side of the [sic] head, but only received medical attention sparingly." (*Id.* at 13.) Furthermore, contrary to Defendants' contention that he did not suffer from a sufficiently serious medical condition, Lucero asserts that "when an inmate that [sic] is severely beaten[] is bleeding, has a bump on the side of his head, scratches and bruises, and[] an aneurysm, he is definitely in obvious need of medical attention." (*Id.*)

### 1.    Law Governing Claims Under the Eighth Amendment for Inadequate Medical Care

"The states have a constitutional duty to provide necessary medical care to their inmates . . .." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). The failure to

provide such care may constitute a violation of the inmate's rights under the Eighth
Amendment if the inmate shows that prison officials were deliberately indifferent to the
inmate's "serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The test
for deliberate indifference is both objective and subjective."  *Martinez v. Beggs*, 563
F.3d 1082, 1088 (10th Cir. 2009).

 With respect to the objective component, "[t]he prisoner must first produce
objective evidence that the deprivation at issue was in fact sufficiently serious. . . . [A]
medical need is sufficiently serious if it is one that has been diagnosed by a physician as
mandating treatment or one that is so obvious that even a lay person would easily
recognize the necessity for a doctor's attention."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th
Cir. 2005)(internal citations and quotation marks omitted).  However, "a delay in
medical care only constitutes an Eighth Amendment violation where the plaintiff can
show the delay resulted in substantial harm."  *Id.*  (internal citation and quotation
marks omitted).

 Next, as the Tenth Circuit has explained, "[t]o prevail on the subjective
component, the prisoner must show that the defendants knew he faced a substantial risk
of harm and disregarded that risk, by failing to take reasonable measures to abate it.  A
prison official cannot be found liable under the Eighth Amendment for denying an
inmate humane conditions of confinement unless the official knows of and disregards
an excessive risk to inmate health or safety; the official must both be aware of facts from
which the inference could be drawn that a substantial risk of serious harm exists, and he
must also draw the inference."  *Martinez*, 563 F.3d at 1089.

## 2.    Lucero's Inadequate Medical Care Claim

Lucero has failed to produce any cognizable evidence to support either the objective or subjective component of his claim in this regard.  With respect to the objective component, the only support Lucero has offered for his claim that unidentified "jail guards" ignored his requests for medical attention is his affidavit attached to his Response, which comprises mostly self-serving statements that speak to other individuals' knowledge.  Specifically, Lucero states in his affidavit that "[he] believes the jail guards saw the last couple of seconds of my September 24-25, 2007 beating," and adds that "[a]fter [he] was jumped and beaten the second time, the jail guards saw that [he] was bleeding, had a bump on the side of [his] head (which was later diagnosed as an aneurysm), several scratches and bruises — it had to have been plainly obvious to the guards that [he] was in need of medical care."  (Lucero Aff. ¶¶ 7-8.)  It is clear that "[t]o survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56 (e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").  The quoted statements from Lucero's affidavit reflect nothing more than Lucero's self-serving speculation concerning what the unidentified "jail guards" allegedly saw and knew and the conclusions they purportedly drew from their observations and knowledge, all of which are entirely outside the scope of Lucero's personal knowledge.

Additionally, even taking as true the quoted statements from Lucero's affidavit, nothing in those statements establishes that Lucero suffered substantial harm from the alleged denial of medical care. While Lucero claims to have been diagnosed with an aneurysm in January 2008 (Lucero Aff. ¶ 14), he has not provided any evidence to support that claimed diagnosis or to suggest that any alleged deprivation of medical care caused his aneurysm. Thus, even if the Court were to accept as true the aforementioned statements in Lucero's affidavit, neither those statements nor the other record evidence would support the objective component of his claim.

Similarly, the subjective component of his claim is also without evidentiary support. Strikingly absent from any of the documents attached to his Response is any specific mention of either Sgt. Jones or Director Goodrich. Instead, Lucero repeatedly makes vague reference to unidentified "jail guards" and their allegedly deliberate denial of medical care to Lucero despite purportedly visible bleeding and bruising. (*See*, *e.g.*, Lucero Aff. ¶ 8.) Once again, even taking those statements as true, the record is devoid of any evidence suggesting that either Sgt. Jones or Director Goodrich knew of and disregarded a risk to Lucero's health or safety or that any actions reasonably attributable to them resulted in others doing so. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-80 (10th Cir. 2008)(Holding that "[f]or liability under section 1983, direct participation is not necessary. Any official who 'causes' a citizen to be deprived of h[is] constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of h[is] constitutional rights."). Therefore, without any evidence linking either Sgt. Jones or Director Goodrich to the alleged denial of medical care, Lucero cannot establish the subjective component of his claim.

16

Because Lucero has not offered any evidence to support either the objective or subjective component of his claim, the Court finds that Defendants' Motion with respect to this claim should be granted.

**B.    Eighth Amendment Failure to Protect Claim**

Mr. Romero seemingly indicated in his letter to the Court and in his remarks at the pretrial conference that Lucero intends to assert a claim under the Eighth Amendment for failure to protect.  Presumably because this claim was not immediately obvious from the vague language of Lucero's Second Amended Complaint, Defendants did not explicitly move for summary judgment on this claim.  However, Defendants did move for summary judgment on Lucero's substantive due process failure to protect claim using a legal standard that is somewhat of an amalgamation of the Eighth Amendment and substantive due process standards governing failure to protect claims. Thus, before reaching the merits of Lucero's putative Eighth Amendment failure to protect claim, the Court must first decide whether it should do so in light of the arguments presented.

Although Defendants presented their arguments concerning Lucero's failure to protect claim under the section of their Motion addressing Lucero's substantive due process claim, the legal standards they articulated and the arguments they presented both invoked Eighth Amendment jurisprudence.  (*See* Mot. at 6-8, arguing that Lucero failed to demonstrate that Defendants were deliberately indifferent to Lucero's safety.) Curiously, Lucero responded by raising his arguments under Eighth Amendment standards and almost entirely ignored the substantive due process components of Defendants' arguments.  Consequently, the parties seem to have unintentionally briefed Lucero's Eighth Amendment failure to protect claim.  As the Tenth Circuit has explained, "a district court may enter summary judgment *sua sponte* if the losing party

was on notice that [he] had to come forward with all of [his] evidence." *Ward v. Utah*,

398 F.3d 1239, 1245-46 (10th Cir. 2005)(citation and quotation marks omitted). Based

on the arguments Lucero presented in his Response, the Court finds that he had

sufficient notice of the need to present all of the evidence supporting his failure to

protect claims. Indeed, despite Defendants claiming to move for summary judgment on

Lucero's substantive due process failure to protect claim, Lucero responded by

ostensibly arguing the merits of both his Eighth Amendment and substantive due

process failure to protect claims. As such, the Court concludes that Lucero was fully

aware of the need, and in fact intended, to come forward with all of the evidence

supporting his Eighth Amendment failure to protect claim. Therefore, the Court will

consider the merits of Lucero's putative Eighth Amendment failure to protect claim in

light of the parties' respective arguments and the record evidence.

Defendants argue that Lucero has failed to demonstrate any negligence, much

less deliberate indifference, by Sgt. Jones in causing the alleged second beating.

Likewise, in their Reply, Defendants contend that Lucero has not offered any evidence

that he was incarcerated under conditions posing a substantial risk of serious harm or

that Defendants were aware of any such conditions.

Lucero responds by arguing that summary judgment is not proper on this claim

because the uncertainty regarding the date of the second alleged beating purportedly

creates a genuine issue of material fact that is properly resolved by a jury and not by the

Court at the summary judgment stage. Furthermore, Lucero asserts that he "has

demonstrated that he informed [Sgt.] Jones that he had been previously beaten by

Arizona inmates that were in B-Pod . . . [and that Lucero] told [Sgt.] Jones that if he

18

were placed in B-Pod he'd get jumped." (Resp. at 8-9.) While Lucero maintains that Sgt. Jones ignored Lucero's request not to be housed in B-Pod, he agrees that in doing so Sgt. Jones promised Lucero to "keep an eye out for him." (Lucero Dep. 27:22-25.) Nevertheless, Lucero contends that "[d]espite [his] desperate and repeated pleas for help, [Sgt.] Jones forced [Lucero] to occupy B-Pod and [Lucero] was severely beaten an hour after being housed there." (Resp. at 9.) With respect to this latter contention, Lucero maintains that he has demonstrated deliberate indifference through evidence, rather ambiguously described, that he filed "several grievances, [but] few were heard." (*Id.* at 10). Although it is unclear, it appears that by this language Lucero is saying that he presented grievances that were ignored, which resulted in him being placed in B-Pod again where he sustained the second alleged beating.

### 1.   Law Governing Claims Under the Eighth Amendment for Failure to Protect

It is well settled that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)(alteration in original, citation omitted). The United States Supreme Court has recognized that "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834 (internal quotation marks and citation omitted). However, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* Indeed, "[t]o establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the

objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdencia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)(internal quotation marks and citation omitted).

The United States Supreme Court has made clear that "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. As such, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment," that would give rise to liability under the Eighth Amendment *Id.* at 838. Instead, "[t]he subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Verdencia*, 327 F.3d at 1175 (internal quotation marks and citation omitted).

### 2.  Lucero's Eighth Amendment Failure to Protect Claim

Lucero has once again failed to offer sufficient evidentiary support to defeat Defendants' Motion on this claim. Despite claiming to have demonstrated numerous facts that at first blush appear to lend support to his claim, Lucero has merely relied on his own self-serving deposition testimony and affidavit, which do nothing more that reiterate, albeit in slightly different words at times, the allegations in his Second Amended Complaint. It is axiomatic that a plaintiff must do more than rely on the averments in his complaint to resist summary judgment, and instead must go beyond the pleadings to demonstrate a genuine issue for trial. *Gonzales v. Millers Cas. Ins. Co. of Tex.*, 923 F.2d 1417, 1419 (10th Cir. 1991). Although Lucero has not cited his Second

Amended Complaint as a basis for resisting summary judgment, his reliance on his deposition testimony and affidavit that essentially mirror the majority of the allegations in his Second Amended Complaint is tantamount to doing so.

Furthermore, even assuming Lucero could rely on his self-serving affidavit and deposition testimony to resist summary judgment, the Court would not necessarily have to accept as true the related factual allegations.  While it is typically not the role of the Court to weigh credibility at the summary judgment stage, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Here, the record evidence strongly contradicts Lucero's version of events. Importantly, the MCADC has no record of Lucero ever being housed in B-Pod between September 21 and September 25, 2007, nor does MCADC have any record of an altercation involving Lucero or a grievance or medical services request form from Lucero on those dates. (Silversmith Aff. ¶ 10-12; *cf. id.* ¶ 13.)  Furthermore, the shift schedule for September 21, 2007, the day that Lucero was booked, reveals that Sgt. Jones was not working and the MCADC has no record of Sgt. Jones having any contact with Lucero on that day.  (*Id.* ¶ 6.)  Moreover, despite Lucero's claim that the same group of inmates who allegedly assaulted him before were responsible for the second alleged beating, MCADC records indicate that only one Arizona inmate was housed in B-Pod from September 21 to September 27, 2007, and there are no records suggesting that Lucero and that inmate had any contact whatsoever.  (Ebright Aff. ¶¶ 7, 8.) Additionally, the MCADC offers inmates who are aware of enemies in the facility or who

feel that they need additional protection the option of completing a Request for Investigation of Safekeeping/ Protective Custody/Transfer form. (*Id.* ¶ 11.)  This form is available to all MCADC inmates at the time of booking and through the housing offices, and is thus available to inmates at all times. (*Id.*)  Lucero never completed one of these forms. (*Id.*)  In short, none of these facts support a claim that Lucero was housed under conditions posing a substantial risk of serious harm or that Sgt. Jones was deliberately indifferent to Lucero's safety.

Moreover, the Court notes that even if it were to accept Lucero's deposition testimony and the statements in his affidavit as true, Lucero still could not establish that Sgt. Jones was deliberately indifferent to Lucero's safety.  While Lucero's allegations, if taken as true, could plausibly support a claim for negligence against Sgt. Jones,[8] nothing in those allegations supports a finding that Sgt. Jones was aware of facts concerning an actual, perceptible risk to Lucero's safety beyond Lucero's recollection of an alleged beating from several months before.  Stated otherwise, Lucero's deposition testimony and affidavit in no way demonstrate that Sgt. Jones knew that the same inmates who allegedly beat Lucero during his earlier 2007 incarceration were still present in B-Pod, or alternatively, that Sgt. Jones actually drew the inference that placing Lucero in B-Pod with those inmates would result in Lucero being beaten again.  Therefore, because Lucero's putative Eighth Amendment failure to protect claim is without evidentiary support, the Court finds that Defendants should be granted summary judgment on this claim.

---

[8] The Court makes clear that it is not ruling on the issue of Sgt. Jones' alleged negligence, which is not at issue in Lucero's claims under § 1983.

### C.      Substantive Due Process Claim

Next, Defendants move for summary judgment on Lucero's substantive due process claim for failure to protect.  However, in their Motion, Defendants provided only a partial legal standard and made their arguments under a hybrid of that standard and the standard applicable to Eighth Amendment failure to protect claims.  Specifically, Defendants argue that mere negligence cannot serve as the basis for a substantive due process claim and contend that Lucero has failed to demonstrate any negligence, much less deliberate indifference, by Sgt. Jones in causing the alleged second beating.

In response, Lucero combined his substantive due process and Eighth Amendment arguments concerning his failure to protect claim into one section of his Response, and thus his arguments in response to Defendants' Motion concerning his alleged substantive due process claim are identical to those discussed in Part II.B *supra*. It appears that Lucero may have combined his arguments based on his misunderstanding of the applicable law, *i.e.* that the deliberate indifference standard applicable to his Eighth Amendment claim also applies to his substantive due process claim.   Regardless of the reason though, Mr. Romero stated in his letter responding to the Court's inquiry that Lucero acknowledges his substantive due process failure to protect claim is duplicative of his Eighth Amendment failure to protect claim.

### 1.      The Law Governing Substantive Due Process Claims for Failure to Protect

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  As the United States Supreme Court has explained, however,

"nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago County Dep't of Soc. Svcs.*, 489 U.S. 189, 195 (1989).

However, the courts have recognized two exceptions to this general rule: the special relationship doctrine and the danger creation theory. *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008)(citation omitted). "First, the special relationship doctrine exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Id.* Indeed, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200. "Second, the danger creation theory provides that a state may also be liable for an individual's safety if it created the danger that harmed the individual." *Rost*, 511 F.3d at 1126(internal quotation marks and citation omitted). The Tenth Circuit has explained that:

> A danger creation claim must meet a six-part test: (1) the state entity and individual actors created the danger or increased the plaintiff's vulnerability to the danger; (2) plaintiff was a member of a limited and specifically definable group; (3) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk

was obvious and known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience.

*Rost*, 511 F.3d at 1126 (internal citations and quotation marks omitted).

Even when one of the recognized exceptions applies, the Court must still determine whether the conduct at issue constitutes a constitutional violation. "The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)(internal quotation marks and citation omitted). "To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)(internal quotation marks and citation omitted). "It is well settled that negligence is not sufficient to shock the conscience." *Moore*, 438 F.3d at 1040.

Furthermore, the United States Supreme Court has long recognized that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

### 2.    Lucero's Substantive Due Process Claim

Initially, the Court notes that although Lucero has attempted to assert his failure

to protect claim under both the Eighth Amendment and substantive due process principles, it is clear that the Eighth Amendment provides the explicit source of protection for the rights he alleges Defendants violated, and thus his claim in this regard is not properly raised. Accordingly, Defendants are entitled to summary judgment on Lucero's substantive due process failure to protect claim on that basis.

However, even if Lucero had properly raised a substantive due process claim in this regard, it would still fail. Like his Eighth Amendment failure to protect claim, Lucero's identical substantive due process claim is completely lacking in evidentiary support. As discussed in Part II.B.2 *supra*, the record evidence blatantly contradicts Lucero's ambiguous story and in no way tends to establish conduct by any named Defendant that even approaches a conscience shocking level. Indeed, in response to the Court's inquiry at the pretrial conference, Mr. Romero acknowledged that there is nothing in the record that Sgt. Jones expressed any malice towards Lucero, made any comments to Lucero suggesting that Sgt. Jones intended to procure Lucero's alleged beating, or engaged in any other conduct that would reasonably be considered to shock the conscience. Instead, the only evidence concerning Sgt. Jones' purported interaction with Lucero before placing him in B-Pod was Sgt. Jones' promise to "keep an eye out" for Lucero, which in no way rises to a level of conscience shocking behavior.

Furthermore, aside from a dearth of evidence, Lucero's claim in this regard is also lacking in legal support. Contrary to Mr. Romero's assertion, the deliberate indifference standard applicable to Eighth Amendment failure to protect claims, *see Verdencia,* 327 F.3d at 1175, does not apply to identical claims asserted under the framework of substantive due process. Rather, the standard under substantive due

26

process is more onerous as a plaintiff must first show that the conduct alleged falls into one of the recognized exceptions, *Rost*, 511 F.3d at 1126, and if it does, the plaintiff must then show that the conduct was so outrageous and created a risk of harm so great as to shock the conscience of federal judges, *Tonkovich*, 159 F.3d at 528.   Lucero has not even attempted to argue that his claims fall under either of the recognized exceptions, and because the Court is mindful that "the district courts [] have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it[,]" *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998), the Court declines to address whether Lucero's claims fall under either of those exceptions.   However, the Court observes that even if the conduct alleged did fall under one of those exceptions, Lucero would still not prevail on his claim in this regard given that he has failed to offer any evidence that could support a finding of outrageous, conscience shocking conduct in this case.   Accordingly, the Court finds that Defendants' Motion with respect to this claim should be granted.

## III.    Supervisory Liability Claim Against Director Goodrich

Although Defendants incorporated their arguments concerning Lucero's supervisory liability claim against Director Goodrich into the other portions of their Motion addressing the underlying constitutional claims Lucero alleged, for the sake of clarity the Court will address this aspect of Lucero's claims separately.

Defendants move for summary judgment on Lucero's claims against Director Goodrich in her supervisory capacity, although they do so in the context of addressing Lucero's municipal liability claim for failure to train and supervise.   In applying the

incorrect legal standard to their analysis of the latter claim, Defendants argue that Lucero cannot establish a claim against Director Goodrich in her supervisory capacity because Lucero has not offered any evidence that Director Goodrich had any personal involvement in the alleged constitutional violations.  Presumably because Defendants did not devote a separate section of their Motion to this argument and raised it in the context of addressing Lucero's other claims, Lucero did not respond to Defendants' Motion in this regard.

At the pretrial conference, the Court inquired into Lucero's position on Defendants' Motion concerning his supervisory liability claim against Director Goodrich and the basis for his claim in that regard.  In response to the Court's inquiry, Mr. Romero stated that Lucero opposes Defendants' Motion on his supervisory liability claim and indicated that the primary basis for his claim in that regard is his contention that Director Goodrich's supervision of the MCADC was "sparse."  In that vein, Lucero asserts that Director Goodrich had to be aware of the violence between Arizona and New Mexico inmates and maintains that Director Goodrich failed to take adequate steps to quell that violence and to protect inmates from it.  However, Mr. Romero acknowledged that Lucero does not contend that Director Goodrich personally participated in any alleged constitutional violations but instead bases his claim on her allegedly inadequate supervision of her subordinates that he asserts led to violations of his constitutional rights.

### A.    Law Governing Supervisory Liability

It is well settled that claims of federal constitutional violations under § 1983 may not be based on a theory of respondeat superior. *Monell v. Dep't of Soc. Svcs.*, 436 U.S.

658 (1978); *see also Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir.

2006)(noting that "[t]here is no concept of strict supervisor liability under § 1983.")

(citation omitted).  However, "[t]his does not mean that a supervisor may not be liable

for the injuries caused by the conduct of one of h[er] subordinates. It does mean that

h[er] liability is not vicarious, that is, without fault on his part."  *Serna*, 455 F.3d at 1151

(citation omitted).  The Tenth Circuit has thus articulated the standard for supervisory

liability under § 1983 as follows:

> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights. To
> establish supervisor liability under § 1983, "it is not enough for a plaintiff
> merely to show a defendant was in charge of other state actors who
> actually committed the violation. Instead, ... the plaintiff must establish 'a
> deliberate, intentional act by the supervisor to violate constitutional
> rights.'" Jenkins, 81 F.3d at 994-95 (quoting *Woodward v. City of
> Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). In short, the supervisor
> must be personally "involved in the constitutional violation," and a
> "sufficient causal connection" must exist between the supervisor and the
> constitutional violation. *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir.
> 2006).
>
> In order to establish a § 1983 claim against a supervisor for the
> unconstitutional acts of his subordinates, a plaintiff must first show the
> supervisor's subordinates violated the constitution. Then, a plaintiff must
> show an "affirmative link" between the supervisor and the violation,
> namely the active participation or acquiescence of the supervisor in the
> constitutional violation by the subordinates. *Holland v. Harrington*, 268
> F.3d 1179, 1187 (10th Cir. 2001); *Green v. Branson*, 108 F.3d 1296, 1302
> (10th Cir. 1997).  In this context, the supervisor's state of mind is a critical
> bridge between the conduct of a subordinate and h[er] own behavior.
> Because "mere negligence" is not enough to hold a supervisor liable under
> § 1983, a plaintiff must establish that the supervisor acted knowingly or
> with "deliberate indifference" that a constitutional violation would occur.

*Serna*, 455 F.3d at 1151-52.

## B.    Lucero's Supervisory Liability Claim

As Lucero has acknowledged that he does not seek to hold Director Goodrich

liable for any alleged constitutional violations she personally committed, in accordance

with *Serna* he must demonstrate that one of Director Goodrich's subordinates violated his constitutional rights and link Director Goodrich to that constitutional violation by demonstrating her knowledge of or deliberate indifference to its occurrence.  Lucero has failed to offer any evidence to support either component of his claim.  Importantly, as discussed in Part II *supra*, the record is devoid of evidence that any of Director Goodrich's subordinates violated Lucero's constitutional rights.  Hence, Lucero's supervisory liability claim fails on that basis alone.

However, even assuming Lucero could demonstrate that one of Director Goodrich's subordinates violated his constitutional rights, Lucero has not offered even a scintilla of evidence that Director Goodrich was in any way aware of or deliberately indifferent to a violation of Lucero's constitutional rights.  In fact, noticeably absent from his Response, and from virtually every other document filed in this case, is any mention of Director Goodrich, which perhaps explains the brevity of Defendants' arguments concerning Lucero's claim against her.  Despite having the benefit of a complete, extended discovery period, Lucero has failed to provide any evidence supporting his claim of widespread violence at the MCADC or inadequate security measures to prevent that alleged violence.  In short, based on the record evidence, no reasonable juror could find an affirmative link between Director Goodrich and any alleged constitutional violation by one of her subordinates.  Accordingly, Defendants' Motion on Lucero's supervisory liability claim against Director Goodrich should be granted.

## IV.   Qualified Immunity

Sgt. Jones and Director Goodrich assert that they are entitled to qualified immunity on each of Lucero's claims under § 1983.  Specifically, they argue that they are

entitled to qualified immunity because Lucero "cannot demonstrate that the individually named County Defendants violated his rights or any clearly established law." (Mot. at 12.)  In response, Lucero contends that Sgt. Jones and Director Goodrich are not entitled to qualified immunity because "[d]ecisions within this circuit appear to have already held that being free from cruel and unusual punishment and being guaranteed due process . . . are rights that were clearly established at the time of the conduct at issue." (Resp. at 16.)

### A.      The Law Governing Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))(internal quotation marks omitted). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S.Ct. at 815.  With respect to the latter interest, the United States Supreme Court has emphasized that qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation" to avoid subjecting government officials to the costs and burdens of litigation unnecessarily, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam).

The analysis of a government official's entitlement to qualified immunity follows a two-step approach.  In the context of a motion for summary judgment, the court "must first decide whether the facts [the] plaintiff has . . . shown . . . make out a violation of a constitutional right."  *Pearson*, 129 S. Ct. at 815-16.  "[I]f the plaintiff has satisfied this first step, the court must [then] decide whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Id.* at 816 (internal citation and quotation marks omitted).  Under the approach recently articulated in *Pearson*, the Court may exercise its discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818.

In conducting this analysis, it is generally the case that the Court will "accept the facts as the plaintiff alleges them."  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  However, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (second and third alterations in original).

### B.   Whether Sgt. Jones and Director Goodrich are Entitled to Qualified Immunity

Initially, the Court observes that the parties do not dispute that the governing law was clearly established at the time of the conduct alleged.  While Lucero seemingly argues that the mere existence of clearly established law governing the conduct at issue vitiates Sgt. Jones' and Director Goodrich's claimed entitlement to qualified immunity,

that argument is without merit.  Instead, where, as here, the parties do not dispute that

the applicable law was clearly established at the time of the conduct alleged, the Court

must still decide whether the alleged conduct violated that clearly established law.  In

accordance with the discussion in Parts II-III *supra*, Lucero has utterly failed to offer

any evidence to support his claims that either Sgt. Jones or Director Goodrich violated

his clearly established constitutional rights.  Accordingly, both Sgt. Jones and Director

Goodrich are entitled to qualified immunity on Lucero's claims under § 1983.

## V.    Municipal Liability Claims

Lucero has stated two separate municipal liability claims.  The first claim is based

on the County's alleged policy of either permitting its corrections officers to deliberately

place inmates in situations posing a threat to the inmates' physical safety or ignoring

those officers' decision to do so.  The second claim is based on the County's and Director

Goodrich's purported failure to train or supervise Sgt. Jones on the use of force against

individuals incarcerated in MCADC.  Defendants move for summary judgment on each

of those claims.  The Court will address each claim separately.

### A.    Municipal Liability Claim Based on the County's Allegedly Unconstitutional Policy or Custom

Defendants first move for summary judgment on Lucero's municipal liability

claim regarding the County's allegedly unconstitutional policy or custom regarding the

placement of inmates.  In support of their motion in this regard, Defendants argue that

"[Lucero] has no evidence that the County of McKinley had a widespread practice which

caused his alleged constitutional violations.  In fact, [Lucero] cannot demonstrate that

any of his rights were violated."  (Mot. at 10.)  Accordingly, Defendants maintain that

33

they are entitled to summary judgment on Lucero's municipal liability claim in this regard.

In response, Lucero essentially combines his arguments regarding both of his municipal liability claims and asserts generally that "[t]he Municipality was the moving force behind the constitutional violations in this matter." (Resp. at 15.)  With respect to his policy and custom claim, Lucero contends that the MCADC "had a policy or practice of permitting violations of civil rights . . . [and that the MCADC] knew of rival factions within the facility and took inadequate measures to ensure inmate safety." (*Id.*)  Lucero, relying on his own deposition testimony and affidavit, cites as examples of this purported policy or custom the MCADC's alleged failure to separate or supervise inmates from Arizona and New Mexico who frequently fought one another and the MCADC's claimed failure to fix the security cameras in the B-Pod.

### 1.    The Law Governing Claims for Municipal Liability

In its landmark decision in *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978), the United States Supreme Court held that "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690 (emphasis in original).  Subsequent decisions have thus made clear that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor. . . .  Instead, . . . a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify

a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision[-]maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 403-04; *see also Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)("In order to establish a custom, the actions of the municipal employees must be continuing, persistent and widespread.")(internal citation and quotation marks omitted).

"It is not enough, however, that the plaintiff identify conduct properly attributable to  the municipality, [t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1154 (10th Cir. 2001)(internal citation, quotation marks, and emphasis omitted).

### 2.    Lucero's Municipal Liability Claim Based on the County's Allegedly Unconstitutional Policy or Custom

Once again, Lucero has largely rested on the allegations in his Second Amended Complaint to resist summary judgment but has failed to offer any evidentiary support for those allegations.  Despite claiming that the County maintained a policy of

permitting civil rights violations and turning a blind eye to inmate violence, Lucero has

not cited to any specific County policy even though he has now had the benefit of a

complete, extended discovery period to uncover such a policy.  Likewise, Lucero has not

offered any data or other information that could support finding a custom that was the

moving force behind the alleged constitutional violations.  All Lucero has offered is his

own testimony that inmates from Arizona and New Mexico frequently fought one

another and that the MCADC failed to fix security cameras in B-Pod.  Even accepting

those statements as true, Lucero has made no effort to demonstrate a direct causal

connection between those claimed deficiencies in the operation of the MCADC and the

constitutional violations he alleges.  Thus, in light of the complete absence of evidence

supporting Lucero's claim that a County policy or custom caused the constitutional

violations alleged, the Court finds that Defendants' Motion on this claim should be

granted.

### B.   Municipal Liability Based on Alleged Failure to Train and Supervise

Next, Defendants move for summary judgment purportedly on Lucero's failure to

train and supervise claim.  However, Defendants' arguments supporting their motion in

this regard are puzzling to say the least.  First, Defendants note that Lucero has sued

Director Goodrich and Sgt. Jones in their official capacities, then contend, without any

further elaboration, that negligent supervision cannot serve as the basis for liability

under § 1983.  This argument is strange not only because Lucero has never articulated a

negligent supervision claim but also because he stated his failure to train and supervise

claim against the County and Director Goodrich.

Then, Defendants abruptly change gears and state the general principles governing claims under § 1983 for supervisory liability.  Once again though, Defendants articulate a legal standard that is not applicable in this instance given that the supervisory liability component of Lucero's federal constitutional claims arises in the context of the claims themselves and not in the context of Lucero's municipal liability claim.  Strangely, Defendants never cite to any cases or advance any legal argument concerning Lucero's failure to train claim.  Instead, like their argument regarding Lucero's municipal liability claim based on alleged policy and custom, Defendants summarily argue that they are entitled to summary judgment on this claim because "there is no evidence that the Defendants had direct personal responsibility for any of the claimed deprivation of a constitutional right alleged by the Plaintiff.  Instead, the Plaintiff has made self-serving allegations concerning the Defendants' conduct."  (Mot. at 11.)

Lucero responds by arguing that "Defendant County failed to train its employee (Defendant Jones)[,] which reflects the [C]ounty's deliberate indifference to Plaintiff's constitutionally protected rights."  (Resp. at 15.)  Lucero adds that "[i]t was unreasonable, callous, reckless, and grossly negligent of the Defendant County to fail to train Defendant Jones how to protect its inmates from serious harms like those suffered by the Plaintiff in this matter."  (*Id.*)  However, Lucero fails to cite to any evidence in the record to support his arguments.

### 1.    Law Governing Failure to Train Claims

It is well-settled that "where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, that

failure to train may be properly thought of as a city policy . . . [and] is actionable under §

1983." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007)(quoting *City of*

*Canton v. Harris*, 489 U.S. 378, 389 (1989))(alterations in original, internal quotation

marks omitted); *see also Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)("a

superior's failure to train amounts to deliberate indifference to the rights of persons

with whom his subordinates come into contact, the inadequacy of training may serve as

the basis for § 1983 liability.")(citation omitted).  The Tenth Circuit has explained that:

> The deliberate indifference standard may be satisfied when the
> municipality has actual or constructive notice that its action or failure to
> act is substantially certain to result in a constitutional violation, and it
> consciously or deliberately chooses to disregard the risk of harm. In most
> instances, notice can be established by proving the existence of a pattern of
> tortious conduct. In a narrow range of circumstances, however, deliberate
> indifference may be found absent a pattern of unconstitutional behavior if
> a violation of federal rights is a highly predictable or plainly obvious
> consequence of a municipality's action or inaction, such as when a
> municipality fails to train an employee in specific skills needed to handle
> recurring situations, thus presenting an obvious potential for
> constitutional violations[.]

*Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003)(quoting *Barney v. Pulsipher*, 143

F.3d 1299, 1307-08 (10th Cir. 1998)).  The deliberate indifference standard is not

satisfied, however, by a nebulous assertion of the need for more or better training. *See*

*City of Canton v. Harris*, 489 U.S. 378, 390-92 (1989).  Instead, the plaintiff must point

to specific deficiencies in the portions of the training program most closely related to the

conduct associated with the alleged constitutional violation.  *See id.* at 390-91.  The

plaintiff's obligation does not stop there though, as the plaintiff must also show a direct

causal connection between the failure to train and the violation of his constitutional

rights. *See Carr*, 337 F.3d at 1231 (citing *Brown v. Gray*, 227 F.3d 1278, 1290 (10th Cir.

2000)).

### 2.  Lucero's Failure to Train Claim

The analysis of Defendants' Motion on Lucero's failure to train claim is significantly complicated by Defendants' failure to raise their arguments under the correct legal standard.  As described above, Defendants have raised their arguments under the standard applicable to supervisory liability claims in general, which is not relevant to Lucero's claim in this regard.  In his Response, Lucero actually articulates, albeit in an abbreviated fashion, the correct standard governing failure to train claims, but he fails to cite to any evidence in the record supporting his claim that the County and Director Goodrich failed to train Sgt. Jones adequately with respect to use of force against inmates.[9]  Hence, the current posture of the briefing presents somewhat of a quandary.

As discussed earlier though, "a district court may enter summary judgment *sua sponte* if the losing party was on notice that [he] had to come forward with all of [his] evidence."  *Ward v. Utah*, 398 F.3d 1239, 1245-46 (10th Cir. 2005)(citation and quotation marks omitted).   In this case, the Court concludes that Lucero had adequate

---

[9] In his Second Amended Complaint, Lucero alleges that the specific area in which Sgt. Jones was deficiently trained was with respect to "the use of force against pretrial detainees and/or persons incarcerated at MC[A]DC."  (Second Amended Compl. ¶ 44.)  However, in his Response, Lucero argues a different alleged deficiency in Sgt. Jones' training, namely that the County, and presumably Director Goodrich, failed to train Sgt. Jones "how to protect [MCADC] inmates from serious harms like those suffered by [Lucero] . . . ."  (Resp. at 15.)  Because a party cannot supplement or a amend a complaint in a brief, though, Lucero is bound by the allegations in his Second Amended Complaint.  *See, e.g., Issa v. Comp USA*, 354 F.3d 1174, 1179 (10th Cir. 2003)("plaintiff may not rely on the allegations in his reply brief to supplement his complaint . . .."); *see also Runnemede Owners, Inc. v. Crest Mortg. Corp.*, 861 F.2d 1053, 1057 (7th Cir. 1988)("assertions contained only in the briefs may not be used to expand the allegations of the complaint."); *Coleman v. Keebler Co.*, 997 F.Supp. 1094, 1101 (N.D. Ind. 1998)("it is well-settled that the Plaintiff cannot amend her complaint with a later filed brief in opposition to a summary judgment motion.").  As discussed *infra*, however, regardless of which alleged deficiency he chose to assert, his failure to train claim is without merit.

notice of the need to present all of his evidence on his failure to train claim because Defendants, despite raising their arguments under the incorrect legal standard, specifically stated in their Motion that they were moving for summary judgment on Lucero's failure to train claim.  Additionally, Lucero responded by raising arguments in the context of the correct legal standard governing failure to train claims and thus presumably construed Defendants' Motion as notice of his need to present evidence to defeat Defendants' Motion with respect to that claim.  Therefore, the Court does not believe Lucero would be prejudiced by the Court ruling on this portion of Defendants' Motion, and, further, the Court finds that the interests of judicial economy would be best served by such action.

Turning to the merits of Lucero's failure to train claim, far from pointing to any specific deficiencies in Sgt. Jones' training, Lucero has only alleged, without any evidentiary support, that the County and Director Goodrich failed to train Sgt. Jones adequately with respect to use of force against inmates.  Furthermore, at the pretrial conference, Mr. Romero conceded that Lucero has no evidence that the constitutional violations alleged stemmed from a failure to train rather than a purportedly negligent failure to follow the training provided.  Moreover, even if Lucero had cited to specific training deficiencies, his Response and Surreply are completely silent with respect to the requisite element of a direct causal connection between the purported training deficiency and the alleged constitutional violation.  Accordingly, Defendants' Motion concerning Lucero's failure to train claim should be granted.

## VI.    Punitive Damages

Defendants also move for summary judgment on Lucero's claim for punitive damages under § 1983 contending that "public policy considerations prohibit the assessment of punitive damages against a governmental entity." [10] (Mot. at 16.) Additionally, Defendants maintain that punitive damages against the individually named Defendants are not proper because "there is no evidence that the individually named County Defendants acted negligently much less that they were motivated by evil motive or intent."  (*Id.*)

Lucero responds that punitive damages are indeed appropriate in this case because "[Sgt.] Jones knew Plaintiff would get beaten badly should he be placed in the same cell with the same inmates that beat him previously. [Sgt.] Jones was recklessly, callously [] indifferent to Plaintiff's well-being and in acting as he did, insured a violation of Plaintiff's constitutional rights . . .."  (Resp. at 19.)  However, Lucero does not cite to any evidence in the record that would suggest Sgt. Jones had the knowledge Lucero alleges.  Moreover, Lucero's Response omits any mention of why punitive damages would purportedly be appropriate against Director Goodrich in this case, and thus Lucero's Response fails to offer any evidence or argument supporting a claim in that regard.

Defendants are correct that municipal entities are immune from punitive damages under 42 U.S.C. § 1983, *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271

---

[10] Defendants also moved for summary judgment on Lucero's purported claim for punitive damages under the New Mexico Tort Claims Act.  However, in his Second Amended Complaint, Lucero explicitly states that he is not seeking punitive damages under the New Mexico Tort Claims Act, and thus Defendants' Motion in that regard is moot.

(1981), and thus Lucero's claim for punitive damages against the County and Director

Goodrich and Sgt. Jones in their official capacities should be dismissed, *see Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989)("state officials literally are persons[,] . . . a

suit against a state official in his or her official capacity is not a suit against the official

but rather is a suit against the official's office.  As such, it is no different from a suit

against the State itself.").

      With respect to Lucero's claim for punitive damages against the individual

Defendants,

> Unquestionably, punitive damages are available in § 1983 actions and are
> to be awarded only when the defendant's conduct is shown to be motivated
> by evil motive or intent, or when it involves reckless or callous indifference
> to the federally protected rights of others. The focus must be on whether
> the defendant's actions call for deterrence and punishment over and above
> that provided by compensatory awards. Punitive damages serve a broader
> function than compensatory damages; they are aimed at deterrence and
> retribution.

*Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003)(internal quotation

marks, citations, and alterations omitted.)

      While it is often the case that factual disputes will exist that make the

determination of an award of punitive damages more appropriate for a jury, such is not

the case here.  It is initially important to note that because the Court has found that

Lucero cannot establish any underlying constitutional violation, his claim for punitive

damages on those claims is moot.  Nonetheless, even if the Court had determined

otherwise, Lucero has wholly failed to cite to any evidence in the record to support his

claim for punitive damages against either Sgt. Jones or Director Goodrich.  Even

accepting as true all of Lucero's self-serving statements, the record evidence at most

supports a claim for negligence,[11] which is insufficient to sustain a claim for punitive damages.  Notably, the record is largely silent with respect to Director Goodrich and thus no reasonable juror could conclude based on the paucity of the evidence relating to Director Goodrich that she acted with an evil motive or with reckless disregard for Lucero's constitutional rights.  Likewise, Lucero has failed to present any evidence that Sgt. Jones acted with an evil motive or with reckless disregard of Lucero's constitutional rights, and, indeed, Lucero's own deposition testimony counsels against such a finding. Specifically, Lucero acknowledged that while Sgt. Jones allegedly placed Lucero in B-Pod despite Lucero's statements concerning an earlier beating, Sgt. Jones also stated that he would "keep an eye out" for Lucero, which in no way suggests an evil motive. Furthermore, nothing in the record suggests that Sgt. Jones was aware of an actual risk to Lucero's safety or that Sgt. Jones intentionally placed Lucero in a dangerous situation hoping that physical harm would ensue.  Therefore, based on the arguments and evidence presented, the Court determines that no reasonable jury could find that either Sgt. Jones or Director Goodrich acted with the requisite mental state to warrant an award of punitive damages, and thus Defendants' Motion in this regard should be granted.

**VII.   State Law Claims**

In his Second Amended Complaint, Lucero has also asserted three claims under state law: 1) a claim under N.M. Const. Art. II, Sec. 13, which is New Mexico's equivalent to the Eighth Amendment, alleging that Defendants violated his right to be free from

---

[11] Once again, the Court makes clear that it expresses no opinion regarding the alleged negligence of any Defendant in this case.

cruel and unusual punishment, 2) a claim under the New Mexico Tort Claims Act for assault, and 3) a claim under the New Mexico Tort Claims Act for battery.  Defendants have moved for summary judgment on each of these claims.  However, because the Court has determined that Defendants are entitled to summary judgment on each of Lucero's claims brought under federal law, the Court will exercise its discretion under 28 U.S.C. § 1367 and decline to exercise jurisdiction over the remaining state law claims.  *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)(holding that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  Accordingly, those claims will be remanded to the First Judicial District Court, Santa Fe County, State of New Mexico.

## CONCLUSION

Even accepting as true all of Lucero's allegations in his deposition and his affidavit, no reasonable juror could find that any of the Defendants were deliberately indifferent to Lucero's constitutional rights or engaged in conscience shocking behavior. Furthermore, Lucero has failed to offer any evidence of an allegedly unconstitutional policy or custom or of a deficiency in the County's training of MCADC officers.  Finally, nothing in the record supports a finding that either Sgt. Jones or Director Goodrich acted with an evil motive or with reckless disregard for Lucero's constitutional rights, and thus punitive damages would not be appropriate even if Lucero could establish an underlying violation of his rights.  Because Lucero's state law claims are being remanded, the Court declines to rule on the portions of Defendants' Motion related to those claims.

**IT IS THEREFORE ORDERED THAT:**

1)   Defendants' Motion for Summary Judgment (Doc. No. 65) is GRANTED IN

PART with respect to Lucero's claims under 42 U.S.C. § 1983; and,

2)   Lucero's state law claims will be remanded to the First Judicial District Court,

Santa Fe County, State of New Mexico, by a separate order entered

contemporaneously with this Memorandum Opinion and Order.

_____

SENIOR UNITED STATES DISTRICT JUDGE